## GLASGOW *v.* MOYER, WARDEN OF THE UNITED STATES PENITENTIARY AT ATLANTA, GEORGIA.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF GEORGIA.

No. 1123.   Argued May 13, 1912.—Decided June 7, 1912.

The writ of *habeas corpus* cannot be made to perform the office of writ of error.

The rule that on *habeas corpus* the court examines only into the power and authority of the court restraining the petitioner to act, and not the correctness of its conclusions, *Matter of Gregory*, 219 U. S. 210, applies where the petitioner attacks as unconstitutional, or as too uncertain, the law which is the foundation of the indictment and trial.

Where the court below has remitted the petitioner to his remedy on writ of error, it would be a contradiction to permit him to prosecute *habeas corpus.*

A defendant in a criminal case cannot reserve defenses which he might make on the trial and use them as a basis for *habeas* proceedings to attack the judgment after trial and verdict of guilty. It would introduce confusion in the administration of justice.

THE facts are stated in the opinion.

Mr. *John C. Fay,* with whom *Mr. Chas. Colden Miller* was on the brief, for appellant: -

Section 211 of the Penal Code is unconstitutional

Congress exceeded its constitutional power in not confining the depositing matter in some authorized receptacle of the United States, or for delivery through the United States mail.

There is no authority for this kind of legislation under the grant in § 8 of Art. I, "to establish Post Offices and Post Roads."

This statute, by its broad terms, certainly exceeds the powers of Congress to enact, and is, therefore, unconstitutional and void. *United States* v. *Steffens,* 100 U. S. 82; *United States* v. *Reese,* 92 U. S. 214; *Baldwin* v. *Franks,* 120 U. S. 678; *United States* v. *Harris,* 177 U. S. 305; *United States* v. *Gooding,* 12 Wheat. 460; *United States* v. *Sheldon,* 2 Wheat. 119; *James* v. *Bowman,* 190 U. S. 127.

Section 211 is obnoxious to the guarantees contained in the Sixth Amendment to the Constitution, in that it fails by its lack of certainty and the absence of any standard contained in it to inform the accused of the nature and cause of the accusation. *Cook* v. *State,* 26 Ind. App. 278; *Matthew* v. *Murphy,* 23 Ky. L. Rep. 750; *Johnston* v. *State,* 100 Alabama, 32; *Louis. & N. R. Co.* v. *State,* 99 Kentucky, 132; *Czarra* v. *Board of Medical Supervisors,* 25 App. D. C. 443; *McConville* v. *Jersey City,* 39 N. J. L. 38; *United States* v. *Balt. & Ohio S. W. R. R. Co.,* 222 U. S. 8.

The uncertainty of the statute in the use of the word "obscene" cannot be better illustrated than by referring to the variety of meaning that has been attached to it in the various prosecutions had under it in the various District Courts of the United States. Not less than 26

cases [1] have been before the District Courts of the United States for the definition of the words of this statute, and the various definitions have been almost as numerous as the cases before them. *Tot homines quot sententiae.*

The uncertainty of the law is as obnoxious to "due process of law" as it is to the requirement of informing the accused of the nature of the accusation against him. Until the legislature has defined a crime in definite words it has not made a valid law; there can be no due process of law to enforce it.

That such uncertainty in a statute creating a punishment for an act which is *malum prohibitum* only, which in its practical operation and enforcement unavoidably involves judicial legislation in defining the crime after the commission of the act, whether left to the court or to a jury, is an *ex post facto* law, and carries with it all the evils that the framers of the Constitution sought to avoid by forbidding such enactment. See *Rosen v. United States,* 161 U. S. 29.

The indictment is insufficient.

---

[1] *United States* v. *Bennett,* Fed. Cas. No. 14, 571; *United States* v. *Britton,* 17 Fed. Rep. 733; *United States* v. *Brazeau,* 78 Fed. Rep. 463; *United States* v. *Coleman,* 131 Fed. Rep. 829; *United States* v. *Commerford,* 25 Fed. Rep. 903; *United States* v. *Clark,* 37 Fed. Rep. 107; *United States* v. *Cheesman,* 19 Fed. Rep. 498; *United States* v. *Clarke,* 33 Fed. Rep. 402; *United States* v. *Clarke,* 38 Fed. Rep. 734; *United States* v. *Davis,* 38 Fed. Rep. 327; *United States* v. *Debout,* 28 Fed. Rep. 523; *United States* v. *Harman,* 45 Fed. Rep. 421; *United States* v. *Lamkin,* 73 Fed. Rep. 463; *United States* v. *Moore,* 129 Fed. Rep. 160; *United States* v. *Martin,* 50 Fed. Rep. 921; *United States* v. *Males,* 51 Fed. Rep. 42; *United States* v. *Redd,* 176 Fed. Rep. 944; *United States* v. *Smith,* 45 Fed. Rep. 418; *United States* v. *Smith,* 45 Fed. Rep. 477; *United States* v. *Shepherd,* 160 Fed. Rep. 584; *United States* v. *Slenker,* 32 Fed. Rep. 695; *United States* v. *Smith,* 11 Fed. Rep. 664; *United States* v. *Timmons,* 85 Fed. Rep. 205; *United States* v. *Wroblensky,* 118 Fed. Rep. 496; *United States* v. *Williams,* 4 Fed. Rep. 485; *United States* v. *Wrightman,* 29 Fed. Rep. 636.

The facts and record in this case make it distinguishable from the *Rosen Case,* 161 U. S. 29.

The Constitution requiring that the grand jury should find the indictment, neither the court, the prosecuting officer, nor any one else, has power to create the necessary averments to make that an indictment which otherwise would be no indictment at all. The general rule requires an indictment to be specific. *Stephens* v. *State,* Wright (Ohio), 73; *Commonwealth* v. *Gillespie,* 7 Serg. & R. 469; *Commonwealth* v. *Stow,* 1 Massachusetts, 54; *Commonwealth* v. *Bailey,* 1 Massachusetts, 62; *Commonwealth* v. *Sweney,* 10 Serg. & R. 173; *Commonwealth* v. *Wright,* 1 Cush. 46; *Commonwealth* v. *Tarbox,* 1 Cush. 66; *Commonwealth* v. *Houghton,* 8 Massachusetts, 107; *King* v. *Beere,* 12 Mod. 219; *State* v. *Parker,* 11 Am. Dec. 735. See also *Commonwealth* v. *Stevens,* 1 Massachusetts, 203. The Constitution forbids in a certain class of cases prosecution except by indictment; therefore, to the extent that such knowledge is essential to constitute a valid instrument, the accused is entitled, under the Constitution, to know the secrets of the grand jury room.

*The Solicitor General* for appellee.

Mr. Justice McKenna delivered the opinion of the court.

This appeal is prosecuted to review the order of the District Court denying petition of appellant to be discharged in proceedings for *habeas corpus* from the custody of the Warden of the United States Penitentiary at Atlanta, Georgia.

The petition alleges the following: On the 21st of July, 1911, while appellant was temporarily in Wilmington, Delaware, he was arrested and charged with peddling books without a license and was convicted in the Municipal Court of the city and fined $5.00. The judgment was

almost immediately remitted and he was re-arrested and charged with having deposited in the United States mails a copy of an obscene book, and by one William G. Mahaffy, a United States commissioner, committed to the custody of the warden of the Newcastle County Workhouse to await the action of the grand jury. Under the direction of the United States Attorney his rooms were pillaged and all of his possessions, clothing, books, etc., were carried off and deposited in the United States court house. Before his conviction he was stripped of his clothing, dressed in prison garb, harsh prison rules were enforced against him and he was fed on unwholesome food. He was so confined and treated until a grand jury, selected by the commissioner who had committed him, found an indictment against him charging him with having deposited an obscene book in the United States mails, and, without seeing a copy of the indictment or knowing its contents, he was arraigned in his prison clothes, notwithstanding the indictment charged no offense against the laws of the United States and was couched in vague and uncertain language that did not apprise him of the offense, defects which he brought to the attention of the judge of the District Court, by pleas to the jurisdiction, demurrers and motions to quash, all of which were overruled, and he was placed on trial before a jury selected by the commissioner who had committed him. Although the array was challenged for that cause and the number of peremptory challenges prescribed by law were not allowed him, he was forced to trial, and the jury under instructions from the court was constrained to find a verdict against him, papers material to his defense having been withheld by the United States Attorney, with the acquiescence of the judge, and process for non-resident witnesses having been refused.

Motions in arrest of judgment and for a new trial were filed and the hearing thereof fixed for January 6, 1912, before Edward G. Bradford, District Judge, who, having,

the petition alleged, exhibited during the trial a deep-seated prejudice against appellant and a violent partiality in his rulings for the United States Attorney, appellant in good faith, as in law he was entitled to do, filed an affidavit charging him, the District Judge, with prejudice, and an application to have the same certified to the senior Circuit Judge, then present in the Circuit Court of Appeals for the Third Circuit, together with the certificate of counsel as required by law.

The petition further alleged that by the filing of the same and by operation of the act of March 3, 1911, 36 Stat. 1087, c. 231, which went into operation January 1, 1912, the District Judge became and was disqualified to further proceed in said cause, and any further action taken by him was without jurisdiction and absolutely null and void; further alleged that the judge forbade the clerk to enter of record the affidavit, forbade the clerk to certify the same to the senior Circuit Judge, proceeded to overrule the motions in arrest of judgment and for a new trial, and, against the protest of appellant, sentenced him to confinement in the penitentiary at Atlanta, Georgia, for a term of fifteen months from the sixth of January, 1912, and to pay a fine of $500.

Appellant, the petition alleged, was placed in the hands of the United States Marshal and by him imprisoned by force in his (the Marshal's) office from about 1 P. M., January 6, 1912, without being permitted to return to the court house to get his personal property there, and at midnight was spirited away by a circuitous route to Norfolk, Virginia, where he was imprisoned all night and all of the next day (Sunday). Thence he was taken, manacled, without being supplied with food or being allowed to purchase any, and delivered under the unlawful order of the District Court to the custody of the appellee, by whom he has ever since been confined in the penitentiary at Atlanta, Georgia.

Appellant, the petition alleged, is by the action recited not only unlawfully imprisoned, but, by the refusal to certify his application, affidavit and certificate of counsel to the senior Circuit Judge, "there is now no judge of the United States District Court of Delaware, and no one there authorized to pass·upon his motions in arrest of judgment or motion for a new trial, or competent to sit and certify to the exceptions reserved by him to the many errors committed by said Judge Bradford during his trial, or to permit him to have the same reviewed and set aside by an appellate tribunal."

The allegations of the petition were denied by the District Judge. A writ of *habeas corpus* was prayed, to the end that appellant be discharged or cause to the contrary be shown.

The writ was issued, but upon its return and hearing appellant was remanded to custody.

The court, as grounds for its decision, said: "The real question in this case is whether or not under § 21 of the new Judicial Code, an affidavit such as provided for therein, can be filed after a case has been tried" and verdict rendered, and where the attempt is to disqualify a judge from pronouncing sentence. The court pointed out that in the case at bar there was also the circumstance that the case had been tried and the verdict rendered before the Code went into effect, and the court thought that it could not be conceived that it was the purpose of Congress to apply the act to such a situation, the section itself providing that the affidavit should be filed not less than ten days before the beginning of the term of the court or good cause shown for failure to file within that time. The court said further: "It would require some specific language in this act to satisfy me that Congress intended such an affidavit to be filed at the stage which had been reached in this case."

The court, however, finally concluded that the action of the District Court of Delaware "was a matter for review by the Circuit Court of Appeals on writ for error" and was "clearly beyond the proper scope and use of the" writ of *habeas corpus.*

The assignments of error attack the action of the District Court for error (1) in holding that §§ 20 and 21 of the Judicial Code did not apply to the case at bar; (2) in holding that Judge Bradford had jurisdiction to impose the imprisonment complained of; and (3) in refusing the writ and dismissing the petition. But questions are raised here which were not presented in the petition in the court below or passed on by that court. Section 211 of the Criminal Code act of March 4, 1909, 35 Stat. 1088 (which makes it a crime to deposit obscene books in the mails),[1] under which appellant was indicted, is attacked as unconstitutional because (a) it is not within

---

[1] "Sec. 211. Every obscene, lewd, or lascivious, and every filthy, book, pamphlet, . . . is hereby declared to be non-mailable matter and shall not be conveyed in the mails or delivered from any post-office or by any letter carrier. Whoever shall knowingly deposit, or cause to be deposited for mailing or delivery, anything declared by this section to be non-mailable, . . . shall be fined not more than five thousand dollars or imprisoned not more than five years, or both."

"Sec. 21. Whenever. a party to any action or proceeding, civil or criminal, shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall proceed no further therein, but another judge shall be designated in the manner prescribed in the section last preceding, or chosen in the manner prescribed in section twenty-three, to hear such matter. Every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term of the court, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one such affidavit; and no such affidavit shall be filed unless accompanied by a certificate of counsel of record that such affidavit and application are made in good faith. . . ."

the constitutional grant of legislative power to Congress, in that it does not confine its operation to depositing matter in the United States post-office or other authorized depositary for United States mail; (b) it does not inform appellant of the nature of the accusation against him nor describe an offense with certainty; (c) it is an *ex post facto* law; (d) appellant was deprived of his liberty and property without due process of law. It is also asserted that § 211 does not create an offense against the United States.

Appellant, however, even if, in the absence of all proof of their truth, the recitals of the petition which we have previously stated be accepted for the purpose of this proceeding only as true, encounters an obstacle to a consideration of his contentions in the limitation upon the scope of a writ of *habeas corpus*, and this limitation was the ultimate ground of the decision of the District Court.

The writ of *habeas corpus* cannot be made to perform the office of a writ of error. This has been decided many times, and, indeed, was the ground upon which a petition of appellant for *habeas corpus* to this court, before his trial, was decided. It is true, as we have said, that the case had not then been tried, but the principle is as applicable and determinative after trial as before trial. This was decided in one of the cases cited.—*In re Lincoln,* 202 U. S. 178, which cited other cases to the same effect. Subsequent cases have made the principle especially pertinent to the case at bar. *Harlan* v. *McGourin,* (218 U. S. 442) was an appeal from a judgment discharging a writ of *habeas corpus* petitioned for after conviction, and it was held that the writ could not be used for the purpose of proceedings in error but was confined to a determination whether the restraint of liberty was without authority of law. In other words, as it was said, "Upon *habeas corpus* the court examines only the power and authority of the court to act, not the correctness of its conclusions."

*Matter of Gregory,* 219 U. S. 210, was a writ of *habeas corpus* brought after conviction, and we said that we were not concerned with the question whether the information upon which the petitioner was prosecuted and convicted was sufficient or whether the case set forth in an agreed statement of facts constituted a crime—that is to say, whether the court properly applied the law—if it be found that the court had jurisdiction to try the issues and to render judgment. And for this many cases were cited.

The principle is not the less applicable because the law which was the foundation of the indictment and trial is asserted to be unconstitutional or uncertain in the description of the offense. Those questions, like others, the court is invested with jurisdiction to try if raised, and its decision can be reviewed, like its decisions upon other questions, by writ of error. The principle of the cases is the simple one that if a court has jurisdiction of the case the writ of *habeas corpus* cannot be employed to re-try the issues, whether of law, constitutional or other, or of fact.

We have already pointed out that appellant before his trial petitioned this court in *habeas corpus,* and that his petition was denied on the ground that his proper remedy was by writ of error after trial. In his petition he charged mistreatment by the prison authorities, the taking of his papers and property from his room and from the express office, and, that although he informed the United States Attorney, no permission was granted him to examine his papers for his defense. He also in the petition attacked the indictment against him on the ground that it described no offense against the laws of the United States nor an offense "against any valid law of the United States and afforded no justification for his imprisonment." The petition was accompanied by a brief which presented the same contentions as those now presented, though less elaborately.

Having remitted him to a writ of error as a remedy, it would be a contradiction of the ruling, he not having availed himself of the remedy, to permit him to prosecute *habeas corpus.* The ground of the decision was that there was an orderly procedure prescribed by law for him to pursue, in other words, to set up his defenses of fact and law, whether they attacked the indictment for insufficiency or the validity of the law under which it was found, and, if the decision was against him, test its correctness through the proper appellate tribunals. It certainly cannot be said that the District Court of Delaware did not have jurisdiction of the case, including those defenses, or that its rulings could not have been reviewed by the Circuit Court of Appeals or by this court by writ of error. It would introduce confusion in the administration of justice if the defenses which might have been made in an action could be reserved as grounds of attack upon the judgment after the trial and verdict.

*Order discharging writ affirmed.*