GAMALIER ROSA c/p GAMY, (GAMALIER PÉREZ ALDARONDO), peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE AGUADILLA, HON. JOSÉ A. BIANCHI, JUEZ, demandado.

*Número:* O-74-156     *Resuelto:* 17 de octubre de 1974

*Santos P. Amadeo* y *José Enrique Amadeo,* abogados del peticionario; *Peter Ortiz, Procurador General Interino,* y *Américo Serra, Procurador General Auxiliar,* abogados del demandado.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Tras el juicio correspondiente se declaró culpable al peticionario de los cargos de venta, ocultación y transportación y la posesión y dominio de marihuana. Se le impuso la pena de diez a quince años de presidio en cada caso a cumplirse concurrentemente. Antes de dictarse sentencia el peticionario no hizo moción alguna para presentar prueba de circunstancias atenuantes bajo la Regla 171 de las de Procedimiento Criminal. Apeló el convicto de la sentencia impuesta, la cual se confirmó por este Tribunal el 26 de febrero de 1974 en el caso Cr–73–93. Se devolvió el mandato el 12 de marzo de 1974.

El 8 de abril de 1974 radicó el peticionario ante el tribunal sentenciador una solicitud de reducción de sentencia, previa la concesión de vista sobre el particular. No se exponían en la solicitud las razones para la petición. La solicitud se declaró sin lugar. Contra tal resolución es que se invoca el recurso de autos.

Alega el peticionario en su solicitud de *certiorari* que el Tribunal Superior cometió error al negarse a rebajar la sentencia bajo las disposiciones de las Reglas 171 y 185 (a) ([1]) de las de Procedimiento Criminal, bien porque le amparaba un derecho constitucional a ser oído previamente antes de poder resolverse su petición o bien porque el tribunal sentenciador abusó de su discreción al actuar de tal modo. Del alegato del peticionario ante nos es que surge que "la prueba que aportaría el peticionario y que estuvo impedido de presen-

---

([1]) Las Reglas 171 y 185 (a) disponen:

Regla 171. "El tribunal, a propia instancia o a instancia del acusado o del fiscal, con notificación a las partes o a la parte contraria, podrá oir, en el más breve plazo posible, prueba de circunstancias atenuantes o agravantes a los fines de la imposición de la pena."

Regla 185 (a) "El tribunal sentenciador podrá corregir una sentencia ilegal en cualquier momento. Asimismo podrá, por causa justificada y en bien de la justicia, rebajar una sentencia dentro de los noventa días de haber sido dictada, siempre que la misma no estuviere pendiente en apelación, o dentro de los sesenta días después de haberse recibido el mandato confirmando la sentencia o desestimando la apelación o de haberse recibido una orden denegando una solicitud de *certiorari*."

tar . . . surgió después de dictada la sentencia . . . (y) ·consistía la prueba, en parte, de hechos relacionados con la conducta ejemplar del peticionario mientras estuvo recluido en la Penitenciaría Estatal y actualmente en la Cárcel de Distrito de Aguadilla demostrativa de su rehabilitación . . ." (pág. 4). No se ha ilustrado a este Tribunal de qué otra prueba se trataba.

Nuestra Regla 171 proviene de los Arts. 320 y 321, hoy derogados, de nuestro Código de Enjuiciamiento Criminal, 34 L.P.R.A. secs. 962 y 963, que a su vez derivan de la legislación de California. El Art. 321 es un calco exacto de la Sec. 1204, West's Anno. Calif. Code, *Penal Code*, 1970, vigente desde 1872 hasta 1971. El Art. 320, al que se refería el siguiente, leía así:

"Después de una confesión o veredicto de culpabilidad y siempre que se deje a discreción del tribunal la magnitud de la pena, el tribunal, a indicación verbal de cualquiera de las partes, de que hay circunstancias agravantes o atenuantes de la pena que pueden justamente ser tomadas en consideración, puede, a su arbitrio, oir brevemente esa indicación en el plazo que fije y dando aviso a la parte contraria, en la forma que estime conveniente."

Estas antiquísimas disposiciones de nuestro Código de Enjuiciamiento Criminal se caracterizan por dos rasgos básicos, por tanto, si es que nos limitamos por el momento a·la naturaleza de su semántica. En primer término, dichas disposiciones se refieren a todas luces a la etapa que media entre la convicción y la imposición de la pena. En segundo lugar, la celebración de la vista se deja al arbitrio del tribunal. La Regla 171 se expresa en los mismos términos potestativos del Art. 320.

La lógica de diccionario no es de por sí suficiente, sin embargo, para resolver las controversias jurídicas. Debe examinarse la jurisprudencia, la doctrina y el contexto sociohistórico de las reglas en juego. Estos dos últimos factores

afectan a menudo, a través de los delicados mecanismos que rigen la evolución del derecho, con su precisión de estabilidad y su necesidad también de crecimiento, el rumbo de la jurisprudencia.

En Puerto Rico se ha resuelto que los Arts. 320 y 321 del Código de Enjuiciamiento Criminal exigían que si un acusado temía que una sentencia pudiese ser demasiado severa, tenía que proceder a solicitar la oportunidad de presentar prueba de atenuantes después del veredicto y antes de pronunciarse la sentencia. *Pueblo* v. *Cristy*, 9 D.P.R. 584, 586 (1905); *Pueblo* v. *Brenes*, 9 D.P.R. 559, 564 (1905) (el lenguaje en *Brenes* es un tanto ambiguo, pero se aclara al citársele como autoridad en *Cristy*); cf. *Pueblo* v. *Hernández*, 94 D.P.R. 116 (1967).

La norma de *Cristy* y *Brenes* halla sólido apoyo en la jurisprudencia de California sobre el estatuto de 1872. *People* v. *Rudolph*, 153 P. 721, 722 (Cal. 1915). En la jurisdicción federal no existe una regla concordante con la nuestra, por lo que no es de ayuda acudir al análisis de dicha jurisprudencia sobre este punto. [2]

La Regla 171 no se aparta, respecto a la materia bajo análisis, del patrón de los Arts. 320 y 321 del Código de Enjuiciamiento Criminal ni existe jurisprudencia local que le imparta un significado distinto. Dada su estrecha conexión con la Regla 185(a), la cual interpretamos que permite la presentación de prueba sobre circunstancias atenuantes, dentro de los términos que en ella se especifican, después de dictada la sentencia, es innecesario por ahora discutir la doctrina o las realidades sociales subyacentes respecto a la cuestión mayor que ambas reglas envuelven, asunto al que nos referimos aquí más tarde.

---

[2] Examínese, para fines de comparación, la Regla 32(a)(1) federal. 2 Wright's *Federal Practice and Procedure*, pág. 402, sec. 525 y *Green* v. *United States*, 365 U.S. 301, 304 (1961).

■ En vista, por tanto, de que en el caso de autos se solicitó la rebaja de sentencia después de dictada la misma resolvemos que no es de aplicación en esta instancia la Regla 171 de las de Procedimiento Criminal. No es procedente en consecuencia que nos pronunciemos sobre si la celebración de una vista bajo la Regla 171 representa un requisito constitucional.

En lo que concierne a la Regla 185(a), la solicitud de vista radicada por el peticionario se efectuó dentro de los sesenta días de haberse recibido el mandato, por lo que procede examinar los planteamientos hechos al amparo de sus disposiciones.

La Regla 185(a) se basa en la Regla 35 federal, sin que exista diferencia alguna esencial en los términos de ambas. No hay jurisprudencia puertorriqueña al caso interpretativa de sus disposiciones, pero las mismas se han analizado en varias decisiones federales. En *United States* v. *Krueger*, 454 F.2d 1154 (5th Cir. 1972), por ejemplo, se enfrentó el tribunal a una situación análoga a la presente. El convicto en dicho caso solicitó la rebaja de su sentencia bajo la Regla 35, aduciendo como fundamento su buena conducta durante el plazo transcurrido de su encarcelamiento. El tribunal sentenciador declaró sin lugar su solicitud sin celebración de vista y en apelación se resolvió que el tribunal de instancia no abusó de su discreción al actuar de tal modo. Véanse: *United States* v. *Sanders*, 438 F.2d 344 (5th Cir. 1971); *Gilinsky* v. *United States*, 335 F.2d 914, 916–917 (9th Cir. 1964).

El problema no se ha decidido, sin embargo, de manera absolutamente terminante en la jurisdicción federal, dependiendo usualmente la posición del tribunal de la situación de hechos con que se confronte. En *United States* v. *Garrick*, 399 F.2d 685 (4th Cir. 1968), por ejemplo se señaló que, si bien dentro de las circunstancias de dicho caso no tenía

que haberse celebrado una vista, podría haber situaciones donde tal concesión no sólo sería apropiada sino necesaria. En algunos casos, sin embargo, se ha determinado que constituyó error dentro de las circunstancias especiales envueltas en ellos negar la vista solicitada. *Jones* v. *United States*, 327 F.2d 867 (D.C. Cir. 1963); *United States* v. *Ginzburg*, 398 F.2d 52 (3d Cir. 1968). Ningún caso ha decidido, no obstante, que la denegación de una vista bajo la Regla 35 constituye una violación del debido procedimiento de ley bajo la quinta o decimocuarta enmienda a la Constitución de Estados Unidos.

En lo que concierne a escritos doctrinales sobre el tema, Wright es de opinión que, de ordinario, no es necesaria la concesión de una vista bajo la Regla 35, que el asunto es de orden discrecional. 2 Wright, *Federal Practice and Procedure*, págs. 570–571, sec. 586. El Juez Elmo B. Hunter considera, en su artículo *Post Conviction Remedies*, 50 F.R.D. 153, 154 (1971) que una moción bajo la Regla 35 es básicamente una solicitud de clemencia que depende de la discreción del juez. A su juicio, no constituye un requisito indispensable la celebración de una vista para resolver la solicitud, pero debe concederse ésta si a la luz de las alegaciones y documentos sometidos al tribunal sentenciador ello aparenta ofrecer una mejor oportunidad de que se haga justicia.

Si ampliamos el radio de la investigación para examinar el modo inicial de enfocarse el problema de la presentación de atenuantes, su desarrollo y el índice de satisfacción o insatisfacción, a la luz de las realidades actuales, con la regla vigente pueden observarse algunos datos de extremo interés que pueden ayudar a precisar los contornos de las normas actuales en esta materia. En el derecho común no se reconocía derecho alguno a la presentación de atenuantes por la sencilla razón, principalmente, de que todo delito grave aparejaba la pena de muerte. 4 W. Blackstone, *Commentaries*, 94–95, 205 206. Esta característica del derecho común continuó afectando

la jurisprudencia en Estados Unidos aun mucho después que cambiaron en Inglaterra las circunstancias que originaron la doctrina. Notes, *Procedural Due Process at Judicial Sentencing for Felony*, 81 Harv. L. Rev. 821, 841, escolio 101 (1968).

En la actualidad, el tema de los remedios disponibles a un convicto es objeto de discusión intensa. Es parte, de hecho, de un problema mayor, cuyo tratamiento en el derecho de Estados Unidos ha provocado insatisfacción creciente: las deficiencias de que adolece todo el sistema vigente de imposición de sentencias, así como el sistema de revisión de las sentencias criminales. Frankel, Marvin E., *Criminal Sentences, Law Without Order*, Hill and Wang, N.Y., 1973; National Center for State Courts, 1974, *Proposal and Analisis of a Unitary System for Review of Criminal Judgments*.

La posición de que el derecho a presentar atenuantes es un derecho constitucional no está huérfana de adeptos, Notes, *Procedural Due Process at Judicial Sentencing for Felony*, 81 Harv. L. Rev. 821, 842 (1968), aunque no existen decisiones norteamericanas que así lo sostengan. En lo que toca al modo en que se ha propuesto corregir la situación actual, sin embargo, debe observarse que en las normas preparadas bajo los auspicios del Colegio Americano de Abogados se recomienda específicamente que, de exigirse la dilucidación de cuestiones materiales de hecho, debe concedérsele una vista plenaria al convicto que solicite la rebaja de su sentencia. American Bar Association Project on Standards for Criminal Justice, *Standards Relating to the Administration of Criminal Justice*, 1974, Standards 4.5–4.6 (*Post-Conviction Remedies*); *vide: Ibid.*, Standard 6.1 (*Sentencing Alternatives and Procedures*). Bajo la propuesta citada es muy dudoso, sin embargo, que la razón aducida por el peticionario en este caso constituya base para la concesión de remedio alguno. *Ibid.*, Standard 2.1 (*Post-Conviction Remedies*).

En Inglaterra se ha adoptado recientemente un procedimiento distinto. Allí el Parlamento ha autorizado al tribunal

sentenciador a posponer hasta un plazo de seis meses el término para dictar sentencia con el fin de que el tribunal pueda considerar factores tales como la conducta del confinado después de su convicción, el resarcimiento que haya efectuado de los daños ocasionados por él o cualquier cambio en sus circunstancias. El poder de posposición conferido es discrecional, sin embargo, especificándose las pautas que deben guiar su ejercicio. Criminal Justice Act 1972, c. 71, sec. 22, 42 *Halsbury's Statutes of England* (3a. ed.), 123.

En lo que respecta a la situación en Puerto Rico, las Reglas de Procedimiento Criminal se encuentran bajo activo estudio por una comisión de la Conferencia Judicial. No hemos recibido todavía las recomendaciones pertinentes sobre las reglas aquí envueltas.

En resumen, pertenece este caso a una zona del derecho en estado de plena ebullición. Existe insatisfacción con las normas vigentes. Está evolucionando la ley, pero privan diversos criterios sobre la dirección a seguirse. Apunta la posibilidad de que pueda eventualmente considerarse, al menos en determinadas circunstancias, que una solicitud de corrección de sentencia monta a la reclamación de un derecho constitucional, que exige la celebración de una vista, y no a una mera imploración de misericordia. Tal no es, sin embargo, como hemos visto, el derecho positivo norteamericano actual en situaciones de hecho parecidas o aún más favorables al convicto que la presente y es en la quinta enmienda a la Constitución de Estados Unidos que el peticionario exclusivamente apoya su argumento. *Cf. Calero-Toledo* v. *Pearson Yacht Leasing Co.*, 94 S.Ct. 2080, 42 L.W. 4693, 4694 (1974).

No estamos emitiendo juicio sobre si la denegación de una vista de atenuantes puede constituir en ciertos casos una violación del debido proceso de ley bajo la Constitución de Puerto Rico. La cláusula concernida deriva fundamentalmente de las que al efecto contiene la Constitución de Estados Unidos, pero debe recordarse que ocurre en un contexto más abar-

cador, dadas las notables diferencias, en su raíz e impulso, entre la Carta de Derechos de una y otra constitución. No es el caso presente, sin embargo, el medio más apropiado para expresarnos definitivamente sobre tema de tal magnitud. El tribunal sentenciador tuvo ante sí tan sólo una solicitud general, sin especificación alguna de razones, para la concesión de una vista sobre atenuantes. Contrástese con la moción radicada en el caso parecido de *United States* v. *Krueger*, 454 F.2d 1154 (5th Cir. 1972), en la que se acompañaron hasta declaraciones juradas de las autoridades penales sobre la conducta ejemplar del confinado y otra documentación en sostén de la solicitud. Los problemas constitucionales deben resolverse tan solo en un contexto de hechos concretos y definidos. *E.L.A.* v. *Aguayo*, 80 D.P.R. 552, 583–584 (1958). El resumen realizado del rumbo del pensamiento actual sobre la naturaleza—derecho o privilegio—de las peticiones de vista de atenuantes antes o después de dictada la sentencia no revela, además, que una situación de hechos como la presente deba situarse por fuerza bajo el palio de la protección constitucional que algunos comentaristas consideran que debe exigirse. 81 Harv. L. Rev. 821, 842 (1968), *supra*.

Fuera de la cuestión constitucional, somos de opinión que en determinadas situaciones el tribunal sentenciador debe ejercer su discreción bajo la Regla 185(a) para oir al convicto sobre la prueba de atenuantes de que pueda disponer. *United States* v. *Garrick*, 399 F.2d 685, 686 (4th Cir. 1968). Del breve recuento que hemos hecho de la literatura sobre el particular se desprenden criterios utilizables para guiar dicha discreción. La situación en el caso de autos, sin embargo, no representa la muestra del abuso de discreción necesario para justificar la intervención de este Tribunal.

*Se confirmará la resolución de que se recurre.*